**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NELLIE D. CHAMBLEE,
Plaintiff-Appellant,

v.

MIKE ESPY, Secretary of the United
States Department of Agriculture;
MIKE DUNN, National Administrator
of Farmers Home Administration;
JAMES C. KEARNEY, North Carolina
State Director of Farmers Home

No. 95-3050

Administration; CALVIN ASKEW,
Farmers Home Administration
Supervisor for Hertford County,
North Carolina; TERRENCE EVANS, in
his capacity as the duly appointed
commissioner for the sale of the
"Cowan Farm", Hertford County,
North Carolina File Number
94 SP-1,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, District Judge.
(CA-94-45-2-1-BO)

Argued: September 27, 1996

Decided: November 8, 1996

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Reversed and remanded with instructions by published opinion. Judge Michael wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Stephen Alan Woodson, LAND LOSS PREVENTION PROJECT, Ahoskie, North Carolina, for Appellant. Bruce Charles Johnson, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Stephen A. West, Assistant United States Attorney, Raleigh, North Carolina, for Appellees.

_____

**OPINION**

MICHAEL, Circuit Judge:

Nellie D. Chamblee, a family farmer, sued in district court, claiming that her lender, the Farmers Home Administration (FmHA), was required (under 7 U.S.C. § 1983b, now 7 U.S.C.§ 6991 et seq.) to provide her an administrative appeal of its determination to suspend her application to restructure her delinquent loans. The district court, believing there was no final agency action, granted summary judgment to the agency and dismissed the complaint on the ground that it was not subject to judicial review. Mrs. Chamblee has appealed the district court's order. We conclude that FmHA's decisions, as they applied in Mrs. Chamblee's case, amounted to final agency action that is reviewable in federal court. And our review of FmHA's action leads us to reverse and remand with instructions that the Secretary of Agriculture be ordered to direct his department's National Appeals Division to hear Mrs. Chamblee's administrative appeal.

I.

The facts and procedural history are not in dispute. Together, Nellie D. Chamblee and her husband, William T. Chamblee, farmed a 103-acre tract of land in Hertford County, North Carolina. The Cham-

2

blees had a row crop operation, raising tobacco, peanuts, soybeans and corn. Over the years, they relied on loans from FmHA to finance their farming enterprise. Mr. and Mrs. Chamblee were co-obligors on the notes to FmHA, and the notes were secured by Mr. Chamblee's farm equipment. FmHA took no deed of trust against the farm, which Mr. Chamblee and his brother owned as tenants-in-common.

Mr. Chamblee died on December 3, 1987. Under his will Mr. Chamblee's one-half interest in the farm passed to his wife, and Mrs. Chamblee continued to farm the land with her son. After Mr. Chamblee's death, the encumbered farm equipment was sold and the proceeds paid to FmHA. The loans were undersecured, however, and nearly $95,000 was owed to FmHA at the end of 1988. Mrs. Chamblee, who was unable to keep up with the payments, soon became a delinquent borrower.

When a farmer, such as Mrs. Chamblee, is delinquent on an FmHA loan, Congress (under the Agricultural Credit Act of 1987) authorizes FmHA to undertake "debt restructuring and loan servicing." See 7 U.S.C. §§ 2001-2006. The objectives of the program are to "ensure that borrowers are able to continue farming" and to avoid or minimize losses to the government. Id. § 2001(a). The tools available to FmHA for restructuring or "servicing" a farmer's loan include (1) consolidation, rescheduling or reamortization, (2) interest rate reduction, and (3) write down of principal or accumulated interest. See 7 C.F.R. § 1951.906 (1996). In November 1988 FmHA mailed what it calls a "1951-S loan servicing package" to Mrs. Chamblee. The package notified Mrs. Chamblee that she was "behind with[her] loan payments" and informed her of the availability of loan restructuring programs that might allow her to continue farming. Mrs. Chamblee responded by submitting an application for loan servicing.

Mrs. Chamblee's application for loan servicing revealed that she owed three other creditors a total of $15,500. FmHA's initial calculations indicated that Mrs. Chamblee could not develop a feasible plan of operation if debt restructuring was limited to FmHA; the cooperation of her other creditors was also needed. Accordingly, with Mrs. Chamblee's consent and pursuant to regulations, see 7 C.F.R. § 1951.909(h)(3) (1989), FmHA convened a voluntary meeting of creditors on June 29, 1989. FmHA discovered at the meeting that Mr.

3

Chamblee's estate remained open and that his interest in the farm, although devised to Mrs. Chamblee, was still available as a debt collection source for FmHA. See N.C. Gen. Stat.§ 28A-15-1 (providing that decedent's real and personal property are "assets available for the discharge of debts and other claims against his estate"). In October 1989 FmHA informed Mrs. Chamblee that all action on her loan servicing application had been suspended until "all possible collections had been made against [Mr. Chamblee's] estate." In the meantime, the agency had filed a claim against the estate. The estate could pay FmHA only if the Chamblee farm was sold, but its sale would mean that Mrs. Chamblee could not continue farming.

Mrs. Chamblee appealed the decision to suspend loan servicing to the FmHA National Appeals Staff (NAS).[1] The NAS opened an appeal file but later suspended consideration of Mrs. Chamblee's appeal pending resolution of FmHA's claim against Mr. Chamblee's estate.

In January 1994, because of the claim filed by FmHA, Mr. Chamblee's executor filed a partition action in state court to divide the Chamblee farm. The action was filed against Mrs. Chamblee, who took Mr. Chamblee's one-half undivided interest under his will, and Mr. Chamblee's brother, who owns the other one-half interest. In September 1994 the state court entered an order providing for the partition and appointed a commissioner, who is to sell the parcel allotted to Mrs. Chamblee and pay the net proceeds to Mr. Chamblee's executor. We were told at oral argument that a sale date has been set in December 1996.

In October 1994 Mrs. Chamblee brought an action in United States District Court under 28 U.S.C. § 1331 and the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., to seek an order requiring FmHA to give her "an administrative appeal of the decision to suspend primary loan servicing."[2] The district court granted summary

_____

[1] The duties of the NAS are now placed with the United States Department of Agriculture (USDA)'s National Appeals Division, pursuant to 7 U.S.C. §§ 6992 & 6993.
[2] In her complaint Mrs. Chamblee named, among others, the Secretary of USDA and various officials of FmHA (now called USDA, Farm Service Agency), including FmHA's National Administrator. We refer to these defendants collectively as "FmHA."

4

judgment to FmHA, concluding that there was no final agency action for a court to review. More specifically, the district court said that Mrs. Chamblee was "not entitled to an administrative appeal at this point in the administrative proceedings because loan servicing has been suspended rather than denied." Mrs. Chamblee appeals.

II.

We turn first to whether the district court could hear Mrs. Chamblee's claim under the APA, which provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The "final agency action" requirement is at issue here. To decide whether a particular agency action is final, we consider "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797 (1992). In determining the finality of agency action a court should consider the "practical effect of the [agency's] determination." Kershaw v. Resolution Trust Corp., 987 F.2d 1206, 1208 (5th Cir. 1993). See First National Bank v. Comptroller of Currency, 956 F.2d 1360, 1364-65 (7th Cir. 1992).

Mrs. Chamblee says that she meets the Franklin test because FmHA's decisions to suspend consideration of loan servicing and to suspend her appeal in effect "completed [the] decisionmaking process" in a way that "directly affect[ed]" her. We agree, and we believe that the same undisputed facts satisfy both prongs of Franklin.

FmHA suspended consideration of Mrs. Chamblee's loan servicing (i.e., loan restructuring) application to pursue collection of the debt from Mr. Chamblee's estate. The only asset available to the estate to provide cash for payment is the one-half interest in the farm, which was willed to Mrs. Chamblee, but which remains subject to Mr. Chamblee's debts. FmHA's claim forced the executor to file a partition suit in state court against Mrs. Chamblee and her brother-in-law, and the court has entered an order providing for partition of the farm and directing a commissioner to sell the acreage allotted to Mrs. Chamblee and pay the proceeds to Mr. Chamblee's executor. Mrs. Chamblee believed that FmHA's suspension of loan servicing was an "adverse decision" and filed an appeal with FmHA's National

5

Appeals Staff. The NAS docketed her appeal but later decided to suspend consideration of it.

FmHA argues that there is simply a pause in the decisionmaking process, which will be reactivated when its claim against the estate is disposed of. This argument overlooks the effect of the agency's decisions to suspend consideration of Mrs. Chamblee's application and to suspend her appeal. FmHA's decisions are forcing the sale of the farm. If the farm is sold, Mrs. Chamblee has no chance of offering a feasible plan of farm operation, a requirement for any loan restructuring. Thus, if the farm is sold, Mrs. Chamblee's application for loan servicing will surely be denied. The practical effect of FmHA's suspension decisions, therefore, was to deny Mrs. Chamblee's application for loan servicing. That amounts to final agency action and makes Mrs. Chamblee's claim subject to judicial review according to the APA, 5 U.S.C. § 704.

III.

We now consider whether Mrs. Chamblee is entitled to the relief she seeks -- an order directing the agency to process her administrative appeal.

FmHA argues that it properly suspended Mrs. Chamblee's administrative appeal under the statute and regulations (in effect at the time) governing its internal appeals. According to 7 U.S.C. § 1983b(a), a "borrower . . . who has been directly and adversely affected by a decision of the Secretary made under this chapter" shall be provided with "an opportunity for a hearing [i.e., an appeal] with respect to such decision."[3] The regulations used the same language, allowing appeal to the National Appeals Staff of "[p]rogram administrative decisions

---------------------------------------------------------------

[3] Section 1983b was repealed in 1994 pursuant to a reorganization of USDA. See Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994, Pub. L. No. 103-354, Title II, §§ 271-283, 108 Stat. 3178, 3228-3235 (1994). However, those appeals (which included Mrs. Chamblee's) pending under § 1983b before October 13, 1994, were transferred to the reorganized National Appeals Division. See 7 U.S.C. § 6993. The new statutes provide appeal rights and procedures similar to those provided in § 1983b. See 7 U.S.C. §§ 6994, 6996.

6

of [FmHA] that directly and adversely affect a person." 7 C.F.R. § 1900.55(a) (1989). The regulations defined "[d]irectly and adversely affected" to "mean[ ] having a request for FmHA assistance denied in whole or in part." Id. § 1900.52(i). FmHA, of course, argues that Mrs. Chamblee was not directly and adversely affected by its suspension of loan servicing because the suspension was not the denial of a request for assistance. We believe, however, that the term "directly and adversely affected" in the appeals statute and regulations must be construed the same way as the term "directly affect[ed]" in Franklin v. Massachusetts, supra. As we said in applying Franklin, see part II, supra, FmHA's decision to suspend loan servicing was in reality the denial of Mrs. Chamblee's application. She was thus "directly and adversely affected" by the decision, and her administrative appeal should have been heard.**4**

IV.

We reverse the judgment of the district court and remand with instructions that the district court enter summary judgment in favor of Mrs. Chamblee, determining that her administrative appeal should have been heard and ordering the Secretary of USDA to direct the department's National Appeals Division to hear Mrs. Chamblee's administrative appeal.

REVERSED AND REMANDED WITH INSTRUCTIONS

_____

**4** On the merits of the underlying controversy, FmHA contends that, under the regulations applicable at the time, it was required to pursue collection from Mr. Chamblee's estate before it considered Mrs. Chamblee's application for loan servicing. See 7 C.F.R. § 1962.46(c), (d) & (f) (1989). Mrs. Chamblee disputes this interpretation and points out that newer (1991) regulations require FmHA to allow a surviving family member, who assumes a deceased borrower's farming operation, to pursue loan servicing before the agency seeks liquidation of estate property. See id. § 1962.46(f) (1992). We do not decide what the regulations require or which version applies.

7